Joseph D. Steward, III, Esq.
Kimmel & Silverman, P.C.
1055 West 7th Street, 33rd Floor
Los Angeles, CA 90017
Phone: (213) 340-7770
Fax: (215) 540-8817
Telephone: 215-540-8888 x 134
Facsimile: 215-540-8817
jsteward@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KIMBERLY STARLING** | **Case No.:** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES** |
| **v.** | **1. VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET. SEQ.** |
| **VEHICLE PROTECTION SPECIALIST, LLC, CARGUARD ADMINISTRATION, INC., AND SING FOR SERVICE, LLC DBA MEPCO** | **2. TEXAS BUSINESS & COMMERCIAL CODE §302.101, ET. SEQ.** |
| **Defendants.** | **JURY TRIAL DEMANDED** |

## COMPLAINT

**Kimberly Starling** (hereinafter referred to as "Plaintiff" or "Mrs. Starling"), by and through her attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Vehicle Protection Specialist, LLC** (hereinafter referred to as "VPS"), **CarGuard Administration, Inc.** (hereinafter referred to as "CarGuard") and Sing

for Service, LLC d/b/a MEPCO ("SING") (hereinafter collectively referred to as "Defendants"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and § 302.101 of the Texas Business & Commercial Code.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendants as they regularly and systematically conduct business in the State of California.

4. Defendant VPS maintains its corporate headquarters within the Central District of California at 6789 Quail Hill Pkwy, Suite #720, Irvine CA 92603. Defendants CarGuard and SING purposefully availed themselves to California by contracting with VPS and administering its warranty services.

5. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

7. Plaintiff is a natural person residing in Southlake, Texas 76092.

8. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

9. VPS is a corporation with its principal place of business, head office, or otherwise valid mailing address at 6789 Quail Hill Parkway, Suite 720, Irvine, California 92603.

10. VPS is a "person" as that term is defined by 47 U.S.C. § 153(39).

11. CarGuard is a corporation with its principal place of business, head office, or otherwise valid mailing address at 4901 West 136th Street, Leawood, Kansas 66224.

12. CarGuard is a nationwide administrator of automotive extended protection plans to consumers, include those sold by telemarketers.

13. Defendant Carguard is a "person" as that term is defined by 47 U.S.C. § 153(39).

14. SING For Service, LLC dba Mepco (hereinafter referred to as "SING") is a corporation with its principal place of business, head office, or otherwise valid mailing address at 205 North Michigan Avenue, Suite 2200, Chicago, Illinois 60601.

15. SING is a nationwide financer and payment processor for automotive extended warranty plans.

16. Defendant SING is a "person" as that term is defined by 47 U.S.C. §153(39).

17. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

18. At all times relevant hereto, Defendants worked in concert.

## FACTUAL ALLEGATIONS

19. At all times relevant hereto, Plaintiff, Kimberly Starling maintained a cell phone, the number for which ended in 6499.

20. Plaintiff registered that cell phone number on the Federal Do Not Call Registry in or around September 16, 2007.

21. Mrs. Starling registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

22. At all times relevant hereto, Mrs. Starling maintained a cell phone, the number for which ended in 0442.

23. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around August 16, 2020.

24. Mrs. Starling registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

25. At all times relevant hereto, Mrs. Starling maintained a cell phone, the number for which ended in 6140.

26. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around December 31, 2004.

27. Defendant VPS is an automobile warranty company that sells to consumers, *inter alia*, extended automobile warranty plans.

28. Defendant VPS engages in telemarketing in order to solicit business for its warranty plans and services, including plans administered by Defendant CarGuard.

29. Beginning around summer 2020 and continuing through at least January 14, 2021, VPS placed a series of solicitation calls to Plaintiff in order to sell Plaintiff an extended automobile warranty administered by CarGuard.

30. Defendants' phone calls to Plaintiff utilized an automatically generated and/or pre-recorded voice.

31. Mrs. Starling did not consent to those calls from Defendants.

32. In total, Defendants placed at least 66 calls to Plaintiff on the three separate telephones.

33. An exhaustive list of those calls to her personal phone ending in 6140 is below:

| Date/Time: | Caller ID: |
|---|---|
| August 20, 2020 5:39 pm Central | (817) 547-0926 |
| August 24, 2020 10:14 am Central | (817) 244-9852 |
| August 25, 2020 9:19 am Central | (302) 386-3108 |
| August 26, 2020 11:19 am Central | (954) 420-1924 |
| August 26, 2020 9:23 am Central | (302) 386-3108 |
| August 26, 2020 11:28 pm Central | (815) 384-4595 |
| August 28, 2020 11:08 am Central | (972) 777-5759 |
| August 28, 2020 11:21 am Central | (949) 418-1217 |
| August 28, 2020 11:21 am Central | (949) 418-1217 |
| August 28, 2020 11:23 am Central | (949) 418-1217 |
| August 29, 2020 11:42 am Central | (708) 671-4650 |
| August 31, 2020 9:19 am Central | (302) 386-3108 |
| September 1, 2020 8:55 am Central | (302) 386-3108 |
| September 1, 2020 9:10 am Central | (302) 386-3108 |
| September 2, 2020 8:57 am Central | (302) 386-3108 |
| September 2, 2020 9:01 am Central | (302) 386-3108 |
| September 3, 2020 9:28 am Central | (626) 509-5689 |
| September 3, 2020 9:46 am Central | (949) 418-1217 |
| September 3, 2020 10:12 am Central | (817) 835-7694 |
| September 4, 2020 5:13 pm Central | (272) 420-5987 |
| September 8, 2020 12:56 pm Central | (940) 302-1519 |
| September 8, 2020 3:46 pm Central | (972) 777-5764 |
| September 8, 2020 4:26 pm Central | (469) 653-2128 |
| September 8, 2020 5:54 pm Central | (254) 272-2442 |
| September 11, 2020 10:11 am Central | (817) 416-5060 |
| September 11, 2020 5:06 pm Central | (361) 203-3589 |
| September 15, 2020 5:39 pm Central | (520) 467-5854 |
| September 16, 2020 11:34 am Central | (432) 300-8511 |
| September 16, 2020 1:26 pm Central | (617) 455-0015 |
| October 1, 2020 5:43 pm Central | (507) 260-3274 |
| October 19, 2020 11:29 am Central | (302) 386-3108 |
| November 18, 2020 9:18 am Central | (817) 244-9432 |
| November 23, 2020 4:45 pm Central | (817) 244-1802 |
| November 25, 2020 11:47 am Central | (702) 359-6543 |
| November 25, 2020 11:48 am Central | (725) 666-8395 |
| November 27, 2020 10:34 am Central | (936) 227-0177 |
| December 3, 2020 3:42 pm Central | (817) 244-4210 |
| December 4, 2020 1:44 pm Central | (872) 259-0684 |
| January 14, 2021 11:03 am Central | (707) 277-2631 |

| | |
|---|---|
| February 11, 2021 2:23 pm Central | (210) 516-7475 |
| February 15, 2021 9:16 am Central | (817) 244-9352 |
| March 12, 2021 9:08 am Central | (817) 244-9826 |
| March 17, 2021 | (817) 244-3101 |
| August 13, 2021 8:19 am Central | (817) 657-4616 |

34. Upon information and belief, Plaintiff received additional calls to the phone number ending in 6140 from Defendants not included in the above-list.

35. Plaintiff additionally received calls to the phone number ending in 0442 which is maintained by Plaintiff. An inexhaustive list of those calls follows:

| **Date/Time:** | **Caller ID:** |
|---|---|
| November 27, 2020 1:34 pm Central | (302) 386-3108 |
| November 27, 2020 5:57 pm Central | (302) 386-3108 |
| November 30, 2020 12:30 pm Central | (302) 386-3108 |
| December 9, 2020 12:05 pm Central | (302) 386-3108 |
| December 10, 2020 10:58 am Central | (302) 386-3108 |
| December 10, 2020 5:57 pm Central | (302) 386-3108 |
| December 11, 2020 3:57 pm Central | (302) 386-3108 |
| December 14, 2020 11:12 pm Central | (302) 386-3108 |
| December 15, 2020 1:54 pm Central | (302) 386-3108 |
| December 18, 2020 3:53 pm Central | (302) 386-3108 |

36. Plaintiff additionally received calls to the phone number ending in 6499 which is also maintained by Plaintiff. An inexhaustive list of those calls follows:

| **Date/Time:** | **Caller ID:** |
|---|---|
| October 9, 2020 3:47 pm Central | (470) 649-3551 |
| October 12, 2020 12:59 pm Central | (302) 386-3108 |
| October 12, 2020 1:34 pm Central | (302) 386-3108 |
| October 13, 2020 12:18 pm Central | (302) 386-3108 |
| October 14, 2020 11:50 am Central | (302) 386-3108 |
| October 14, 2020 1:57 pm Central | (302) 386-3108 |
| October 14, 2020 3:07 pm Central | (302) 386-3108 |
| October 15, 2020 12:16 pm Central | (302) 386-3108 |
| October 15, 2020 3:07 pm Central | (302) 386-3108 |
| October 16, 2020 1:10 pm Central | (302) 386-3108 |
| October 19, 2020 11:29 am Central | (302) 386-3108 |

| October 20, 2020 10:26 am Central | (302) 386-3108 |
|---|---|

37. Upon information and belief, Plaintiff received additional calls from Defendants not included in the above-list.

38. Many of the calls placed by Defendants to Mrs. Starling began with an automated voice setting forth a menu of options after Mrs. Starling answered a call.

39. For instance, in a call placed by VPS on September 3, 2020, when Plaintiff answered the call she heard an automated voice utilized by VPS. The automated voice presented the following message "the reason I'm calling you is to remind you that we sent you a final warranty notice in the mail letting you know that the warranty on your vehicle has expired and this is the final call for you to renew the warranty before we close the file. Would you like to hear your options about getting your car back under coverage?"

40. In order to ascertain the identity of the party making harassing solicitation calls, Plaintiff answered the automated question in the affirmative. Thereafter the automated voice presented the following message, "Okay great, I just need to ask you a few questions to see if we can still get you qualified. Do you have less than 150,000 miles on the car?"

41. Plaintiff again answered in the affirmative and the automated voice asked: "is everything running on your vehicle all okay right now?"

42. After answering once more in the affirmative, the automated voice stated, "Fantastic, it looks like we're going to be able to help you out today. I'm going to grab one of our specialists on the line and they'll go over all of the program options with you. Hold on just a moment please."

43. The call was subsequently transferred to an agent of Defendant VPS.

44. As a result of the persistence of the unwanted solicitation calls, Mrs. Starling continued her efforts to identify the company calling her. Plaintiff thereby

asked on various occasions for the agent to state which company they were calling from, all of which resulted in an acknowledgement from the agent that they worked for VPS.

45. In order to further confirm the identity/identities of the calling party/parties, on or around September 1, 2020, Plaintiff agreed to purchase a warranty from Defendants. Plaintiff was continually told that if she purchased the warranty, she would be sent a physical copy of the policy with the company's details contained within.

46. Specifically, Plaintiff received in the mail a "Powertrain Enhanced Service Contract" administered by CarGuard Administration, Inc. with payment to be made via SING.

47. Shortly after receiving the warranty (which was purchased for investigative purposes only), Plaintiff terminated the contract with Defendants.

48. After termination of said contract, Defendants continued to place calls to Plaintiff about the warranty.

49. In addition to terminating the contract and registering the number on the Do No Call registry, Plaintiff told Defendants' live agents to stop calling on numerous occasions.

50. Despite the foregoing demand for the calls to cease, Defendants continued making harassing calls.

51. The unlawful calls continued through at least January 2021.

52. Plaintiff has learned that none of Defendants registered to do business as a telemarketer with the Texas Secretary of State, despite the obligation to do so when soliciting business through telemarketing.

53. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that her privacy has been invaded by Defendants.

54. The foregoing acts and omissions were in violation of the TCPA and Texas Business and Commercial Code.

## **PRAYER FOR RELIEF**

### Direct and Vicarious Liability

55. To the extent Defendants CarGuard and SING outsourced their illegal robocalling to VPS, CarGuard and SING are still liable for calls that violate the TCPA.

56. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

57. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

58. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

59. Defendants CarGuard and SING hired, permitted, and enjoyed the benefits of VPS's mass robocalling.

60. Defendants CarGuard and SING acted as principals to VPS, who acted as their agent.

61. Defendants CarGuard and SING are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from VPS's unlawful calls.

62. For the counts identified below, Defendant VPS is directly liable as the party that caused the unlawful calls to be placed.

63. For the counts identified below, Defendants CarGuard and SING are vicariously liable for the unlawful calls, as they contracted with VPS, benefitted from VPS's unlawful calls and directed VPS's violative conduct.

## COUNT I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(b)

64. Plaintiff incorporated the foregoing paragraphs as through the same were set forth at length herein.

65. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular

telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

66. Federal Communications Commission (FCC) reasonably interpreted TCPA to prohibit any call, including both voice and text call, using automatic telephone dialing system (ATDS) or artificial or prerecorded message to any wireless telephone number, and thus, "call" within meaning of TCPA included text message to consumers' cellular telephones by publisher and mobile marketing firm to advertise publication of novel. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009)

67. Defendants initiated multiple calls to Plaintiff's telephone numbers using an automatically generated or pre-recorded voice.

68. Defendants' calls were not made for "emergency purposes."

69. Defendants' calls to Plaintiff without any prior express written consent.

70. Defendants contacted Plaintiff despite the fact that Plaintiff was on the Do Not Call Registry.

71. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

72. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

73. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT II**
**DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)**

74. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

75. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

76. Defendants contacted Plaintiff despite the fact that Plaintiff has been registered on the Do Not Call Registry since 2004 for one of her phone numbers.

77. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

78. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

79. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT III**
**DEFENDANT VIOLATED § 302.101 OF**
**THE TEXAS BUSINESS & COMMERICAL CODE**

80. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

81. Plaintiff is a “consumer” as defined by § 301.001(2) of the Texas Business and Commerce Code.

82. Defendants are “telephone solicitors” as defined by § 301.001(5) of the Texas Business & Commerce Code.

83. §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

84. Defendants violated § 302.101 of the Texas Business & Commercial Code when their representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

85. §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

**Wherefore**, Plaintiff, **Kimberly Starling** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b. Statutory damages of $500.00 per text/call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Treble damages of $1,500.00 per text/call (as provided under 47 U.S.C. § 227(b)(3));

d. Additional treble damages of $1,500.00 per text/call (as provided under 47 U.S.C. § 227(c);

e. Statutory damages of $5,000 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code );

f. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to. §302.302(a) of the Texas Business & Commerce Code

g. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3)); and

h. Any other relief this Honorable Court deems appropriate.

Respectfully submitted,

Dated: 8/18/2021

By: *<u>/s/ Joseph D. Steward</u>*

Joseph D. Steward, III, Esq.
Kimmel & Silverman, P.C.
1055 West 7th Street
33rd Floor
Phone: 215-540-8888 x 134
Facsimile: 877-788-2864
Email: jsteward@creditlaw.com
teamkimmel@creditlaw.com